IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**KENDRICK KENYATTA TAYLOR**                                                              **PLAINTIFF**

**V.**                                                                     **NO. 4:14-CV-00041-DMB-JMV**

**UNITED STATES OF AMERICA
THROUGH THE UNITED STATES DRUG
ENFORCEMENT ADMINISTRATION**                                 **DEFENDANT**

**OPINION AND ORDER DENYING
MOTION TO SET ASIDE FORFEITURES**

This action to set aside two administrative forfeitures is brought by Kendrick Kenyatta Taylor against the United States of America through the United States Drug Enforcement Administration ("Government"). In his motion seeking such relief, Taylor argues that the Government conducted the forfeiture proceedings against his property without providing him constitutionally required notice of the forfeitures. An evidentiary hearing was held before this Court on February 5, 2016, at which Taylor conceded the propriety of one of the forfeitures. Because Taylor was provided notice of the Government's seizure leading to the remaining forfeiture within sufficient time to file a claim, his motion to set aside the administrative forfeitures will be denied.

**I
Procedural History**

On March 24, 2014, Taylor commenced this action by filing a "Motion to Set Aside Administrative Forfeiture of Funds for Lack of Required Notice." Doc. #1. Taylor's motion seeks to set aside two civil forfeitures: (1) the forfeiture of $182,176.93 in cash seized from his residence ("Cash"); and (2) $13,376.79 seized from his bank account ("Funds"). *Id*. at ¶ 4.

On May 1, 2014, the Government filed a motion for summary judgment. Doc. #6. Taylor responded in opposition to the motion on May 9, 2014, and the Government replied on May 13, 2014. Doc. #8; Doc. #10.

On March 24, 2015, this Court entered an order denying the Government's motion for summary judgment, and requesting additional briefing and evidence from the parties on the issue of whether Taylor was provided notice of the seizures. Doc. #16. The Government renewed its motion for summary judgment and submitted a memorandum in support on March 27, 2015. Doc. #17; Doc. #18. Taylor filed a response in opposition on April 7, 2015. Doc. #19. On October 14, 2015, the Court entered another order denying the Government's renewed motion. Doc. #20.

On January 15, 2016, the parties filed a joint motion requesting an evidentiary hearing on Taylor's original motion to set aside the forfeitures. Doc. #22. The Court granted the motion for an evidentiary hearing on January 25, 2016. Doc. #23.

The Court convened the hearing on February 5, 2016. *See* Doc. #26. At the hearing, Taylor stipulated that the "forfeiture and the notice with [the Funds] forfeiture was correctly done."

## II
## Relevant Facts

### A. Seizures

On July 2, 2010, officers from the Mississippi Bureau of Narcotics ("MBN"), seized $182,206.93 in cash[1] from the attic of Taylor's residence, as well as a CD player, two cellular phones, a television, a computer, a Chevrolet Suburban, and a Lincoln Mark VIII. Doc. #6-1 at

---

[1] Throughout the record, the Cash has been valued at either $182,206.93 or $182,176.93. At the hearing, the parties confirmed that $182,206.93 is the correct amount.

¶ 5(a);[2] Doc. #8-1 at 5. On July 6, 2010, MBN officers seized $13,376.79 in funds from Taylor's Jefferson Bank checking account. Doc. #6-1 at ¶ 4(a).

On July 2, 2010, the Mississippi Department of Public Safety issued a notice of seizure, which lists the two cars and "bulk US currency," stating that "[i]t is anticipated that forfeiture proceedings will be filed against this property." Doc. #8-1 at 3. A second notice of seizure[3] was issued July 12, 2010, for both the Cash and the Funds. *Id*. Each notice of seizure bears what appears to be Taylor's signature. *Id*.

### B. State Forfeiture Action

On July 19, 2010, the State of Mississippi, through the MBN, filed a "Complaint for Forfeiture" ("State Action") in the County Court of Bolivar County, Mississippi, against the two cars, the CD player, the computer, the television, and the two cellular phones seized on July 2, 2010. Doc. #8-2. On July 21, 2010,[4] the Circuit Court of Bolivar County, Mississippi, on the State's motion, ordered that jurisdiction over the Cash be "released from the authority and jurisdiction of this Court for immediate turnover to federal authorities." Doc. #1-3. On July 23, 2010, the MBN issued two checks to the U.S. Marshal's Service in the amounts of $182,206.93 and $13,376.79, respectively. Doc. #1-4.

On July 30, 2010, Taylor filed a "Petition to Contest Forfeiture" in the State Action, challenging the forfeiture of the property listed in the State Action complaint as well as the

---

[2] At the close of the evidentiary hearing, the parties agreed that the exhibits presented to the Court in connection with the summary judgment briefing would remain before the Court and were not required to be admitted into evidence at the hearing. Accordingly, the Court considers the summary judgment record in addressing the merits of Taylor's motion.

[3] Both notices were titled, "Notice of Seizure."

[4] Two copies of the order transferring the Cash and the Funds to the federal authorities, signed on different days, exist in the record. The first, filed with Taylor's complaint, is dated July 21, 2010. Doc. #1-3. The second, dated July 23, 2010, was attached to Taylor's response in opposition to the Government's first motion for summary judgment. Doc. #8-6. Either date is possibly correct but, given that the checks for the Cash and the Funds were issued on July 23, 2010, the former seems more plausible.

forfeiture of the Cash and Funds seized by the MBN. Doc. #8-3. The petition was signed by both Taylor and his attorney, Boyd P. Atkinson. *Id*.

The State responded to Taylor's petition on August 17, 2010. Doc. #8-4. In its response, the State represented:

> Jurisdiction of the $182,206.93 in United States Currency found in the Claimant's residence; and, $13,376.79 in United States Currency seized from the Claimant's bank account has been released by the Circuit Court of Bolivar County and said currency has been turned over to the federal authorities so that forfeiture may be pursued by the Drug Enforcement Administration.

*Id.* at 1–2. The State's response was served on Atkinson at the post office box listed in Taylor's petition. Doc. #8-3 at 3; Doc. #8-4 at 3. At the evidentiary hearing, Taylor testified, and Atkinson confirmed, they were aware that the Drug Enforcement Administration ("DEA") was in possession of the currency.

On August 25, 2010,[5] the County Court, on the State's motion, continued the State Action "until such time as the criminal case that gave rise to this action is fully adjudicated." Doc. #8-5.

## C. Criminal Case

On August 26, 2010, a two-count indictment was filed against Taylor in the United States District Court for the Northern District of Mississippi. Doc. #8-7 at 1–2. A superseding three-count indictment was later filed September 22, 2010. *Id*. at 17–18. *See also United States v. Taylor*, No. 2:10-cr-132 (N.D. Miss. Aug. 26, 2010) (Aycock, J.) ("*Criminal Case*"), at Doc. #3.[6]

Count One of both indictments charged Taylor with "intent to distribute a substance containing Methylenedioxymethamphetamine (MDMA)" in violation of 21 U.S.C. §§ 841(a)(1)

---

[5] Although signed on August 25, 2010, the order continuing the State Action was filed August 30, 2010. Doc. #8-5.

[6] "A court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom." *Matter of Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 211 (5th Cir. 1983).

and 841(b)(1)(C). Doc. #8-7 at 1, 17. Count Two of both indictments sought forfeiture pursuant to 21 U.S.C. § 853 of "any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations, including but not limited to…[a] sum of money equal to One Hundred Eighty-Two Thousand, Two Hundred Six Dollars and Ninety-Three Cents" upon conviction of the offense alleged in Count One. *Id*. Count Three of the superseding indictment charged Taylor with intent to distribute "a mixture and substance containing a detectable amount of marijuana" in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(D). *Id*. at 18. Neither indictment mentioned the Funds.

Taylor pled guilty to Count One of the superseding indictment on June 29, 2011. *Criminal Case*, at Doc. #55. The Court dismissed the original indictment and Count Three of the superseding indictment on January 13, 2012, and dismissed Count Two of the superseding indictment on February 2, 2012, following a motion by the Government. *Criminal Case*, at Doc. #64, #67, #65. On February 17, 2012, United States District Judge Sharion Aycock entered a judgment sentencing Taylor to 51 months imprisonment, followed by three years of supervised release, and an assessment of $100. *Id*. at Doc. #68.

### D. Administrative Forfeitures

On August 27, 2010, the DEA mailed seven notices of seizure regarding the Cash taken from Taylor's attic (listed as Asset Id: 10-DEA-535511). The first was addressed to Kendrick Kenyatta Taylor at 404 Minnie Ervin Street, Rosedale, MS 38725. Doc. #6-2 at 16. The second was addressed to Kendrick Kenyatta Taylor, care of Club Knotsy's,[7] at 703 Railroad Street, Rosedale, MS 38725. *Id*. at 18. The third was addressed to Kendrick Kenyatta Taylor, Prisoner

---

[7] In his complaint, Taylor alleges that Club Knotsy's was his "night club." Doc. #1 at ¶ 9.

5

ID No. 14878, at the Bolivar County Detention Center, 2792 Highway 8, Rosedale, MS 38725. *Id.* at 20. The other four were addressed to Jacqueline Taylor, as well as Lakesha Taylor, Kendrick Taylor,[8] and Sha'kendra Taylor, all care of Jacqueline Taylor, at the 404 Minnie Ervin Street residence. *Id.* at 22, 24, 26, 28. Each notice set two deadlines: (1) a deadline of 30 days from receipt of the notice to file a petition for remission or mitigation with the Forfeiture Counsel of the DEA; and (2) an October 1, 2010, deadline for filing a claim to contest the forfeiture. *Id.* The Government received seven certified mail receipts as a result of these mailings. All seven certified mail receipts bear Jacqueline Taylor's signature and are dated August 30, 2010. *Id.* at 17, 19, 21, 23, 25, 27, 29.

The DEA also mailed four notices of seizure on August 27, 2010, regarding the Funds taken from Taylor's Jefferson Bank checking account on July 6, 2010 (listed as Asset Id: 10-DEA-535426). One notice was sent to Jefferson Bank at 600 Main Street, Rosedale, MS 38725. Doc. #6-2 at 7. The accompanying certified mail receipt for this notice was signed by Tom Fair on September 1, 2010. *Id.* at 8. The other three notices were addressed to Taylor at the same locations found on the notices regarding the Funds—his residence at 404 Minnie Ervin Street, Club Knotsy's, and the Bolivar County Detention Center. *Id.* at 1, 3, 5. All three accompanying certified mail receipts received by the Government bear Jacqueline Taylor's signature and are dated August 30, 2010. *Id.* at 2, 4, 6.

At the hearing, Jacqueline Taylor testified that, at the time the notices of seizure were mailed, the Taylor family did not receive mail at their Irving Street address or at Club Knotsy's, and that she had signed for all of the notices when they arrived at her post office box in Rosedale. She also testified that she never brought the notices with her when she visited her

---

[8] At the hearing on February 5, 2010, Taylor confirmed that Kendrick Taylor was his son.

6

husband at the detention center. Both Taylor and Jaqueline testified that they never discussed the notices of seizure during such visits.[9]

Notices of the seizures of the Funds and the Cash, as well as information to contest the impending forfeitures, were also published in the *Wall Street Journal* on September 13, 20, and 27, 2010. Doc. #6-1 at ¶¶ 4(f) & 5(i).

On November 9, 2010, the DEA issued a Declaration of Forfeiture for the Cash, which was signed by John Hieronymus, Forfeiture Counsel, Asset Forfeiture Section. Doc. #6-2 at 30. On November 17, 2010, a Declaration of Forfeiture, signed by Terrence J. King, Senior Attorney, Asset Forfeiture Section, was issued for the Funds. *Id*. at 15.

# III
## Analysis

The Civil Asset Forfeiture Act of 2000 ("CAFRA") provides a means[10] to challenge a declaration of forfeiture. It states:

> Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—
>
> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
>
> (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

---

[9] Given Jacqueline's testimony about the financial struggles the Taylor family faced while Taylor was in custody, the Court finds the hearing testimony by Jacqueline and Taylor that they never discussed the notices of seizure incredible.

[10] Filing a motion under CAFRA is "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. § 983(e)(5).

18 U.S.C. § 983(e)(1). Accordingly, a civil forfeiture of property must be set aside if: (1) the plaintiff was entitled to written notice; (2) the plaintiff did not receive notice; (3) the government knew, or should have known, of the plaintiff's interests; (4) the government failed to take reasonable steps to provide the plaintiff with notice; and (5) the plaintiff did not know, or have reason to know, of the seizure within sufficient time to file a timely claim.[11] *JPMorgan Chase Bank, N.A. v. United States*, No. 4:09CV150, 2010 WL 890230, at *4 (E.D. Tex. Mar. 9, 2010) (citing *In re Seizure of $143,265.78 from Comerica Checking Account No. 1851349546 & $28,687,40 from Checking Account No. 1080022185*, 616 F.Supp.2d 699, 705 (E.D. Mich. 2009)).

As the Court and the parties have previously noted, there is no dispute that Taylor, as the named owner of the Cash, was a party who appeared to have an interest in the seized property or that the Government knew or should have known of his interest in the money. Doc. #16 at 9–10. Nor is there any dispute that Taylor was entitled to written notice of the administrative forfeiture proceeding. *Id*. at 10. The remaining questions before this Court are: (1) whether the Government took the requisite reasonable steps to provide Taylor with the notice to which he was entitled and (2) whether Taylor neither knew nor had reason to know of the seizure within sufficient time to file a timely claim.[12] *Id.* at 10–12.

---

[11] Where property is seized by a state or local law enforcement agency and then turned over to a federal law enforcement agency for the purpose of forfeiture, CAFRA requires written notice "not more than 90 days after the date of seizure …." 18 U.S.C. § 983(a)(1)(A)(iv). Taylor does not dispute that the Government's notices fall within this time frame.

[12] Taylor also seems to argue that the Government should not have pursued simultaneous criminal and civil forfeiture proceedings. To the extent this argument has been raised, the Court finds it unavailing. The law does not prohibit the simultaneous prosecution of criminal and forfeiture actions. *See United States v. Kordel*, 397 U.S. 1, 11 (1970) ("It would stultify enforcement of federal law to require a governmental agency … invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.").

### A. Knowledge of Seizure

Taylor, in his complaint, states that "[n]otwithstanding the administrative forfeiture, the government continued to make reference" to the seized currency in his criminal case. Doc. #1 at 5. At the evidentiary hearing, Taylor did not dispute that he and Atkinson had knowledge of the seizure or that the money had been turned over to the DEA for forfeiture. Taylor argued, however, that the forfeiture proceedings contained in the indictments were the only forfeiture proceedings of which he and his attorney were aware, and that they responded to the indictments when they were made aware of them.

#### 1. Different standards for determining knowledge

"In cases subject to § 983(e), a movant … will have to show not only that the government knew or reasonably should have known of his interest in the property yet failed to take reasonable steps to notify him, but that he did not know or have reason to know of the seizure within sufficient time to file a timely claim." *United States v. McClendon*, 10 F. App'x 341, 344 (7th Cir. 2001). Accordingly, a motion to set aside declaration of forfeiture will fail, despite the lack of reasonable steps taken by the government to provide notice, where the plaintiff knew or had reason to know of the seizure within sufficient time to file a timely claim. *See Desivo v. United States*, No. 3:05-CV-1432, 2006 WL 2620387, at *1 (N.D.N.Y. Sept. 12, 2006) ("Plaintiff must show both that the government did not take 'reasonable steps' to provide notice and that he did not have 'reason to know of the seizure with sufficient time to file a timely claim'").

Courts have applied three different standards to § 983(e)'s requirement that a claimant did not "know or have reason to know of the seizure." Most courts that have ruled on the issue have strictly interpreted the statute, holding that "a person with actual notice of the seizure who

9

did not receive a written notice and did not timely file a claim loses his or her right to set aside a forfeiture." *United States v. $10,000.00 in U.S. Currency*, No. 06CV2439-L(AJB), 2007 WL 2330318, at *4 (S.D. Cal. Aug. 13, 2007) (noting that this "plain meaning interpretation is also consistent with case law prior to the passage of CAFRA"). In such cases, neither knowledge of the government agency in possession of the property nor knowledge of whether the agency intends to initiate forfeiture proceedings is required. *See, e.g., Johnson v. United States*, No. 1:03-CV-00281-LJM VS, 2004 WL 2538649, at *4 (S.D. Ind. Oct. 22, 2004) ("statute pertains to the seizure itself, not knowledge of agencies in possession"); *In re Sowell*, No. 08-51163, 2009 WL 799570, at *3 (E.D. Mich. Mar. 19, 2009) (language of § 983(e) "requires that the moving party have knowledge of the seizure, but not knowledge of the forfeiture action itself"). Under this interpretation a claimant will be charged with knowledge if he was present when the property in question was seized, or signed a receipt acknowledging the seizure. *See United States v. Baez*, 464 F. App'x 623, 623 (9th Cir. 2011) (interested party "cannot show that he did not know, or have reason to know, of the seizure within sufficient time to file a timely claim, as CAFRA requires, since the monies were seized from his person").[13]

A minority of courts have held that knowledge of the seizure must include knowledge of which government agency took possession of the property. *Bermudez v. City of N.Y. Police Dep't*, No. 07 CIV. 9537 (HB), 2008 WL 3397919, at *6 (S.D.N.Y. Aug. 11, 2008) ("[E]ven if Plaintiff knew that his money had been seized, he did not have adequate knowledge of the seizure to file a claim with the appropriate agency"). In these cases, courts have reasoned that,

---

[13] *See also Harrington v. Drug Enforcement Administration*, No. 05–CV–206–WOB, 2006 WL 897221, at *4 (E.D. Ky. Apr. 6, 2006) (claimant had reason to know where "the DEA had seized the money from his pocket"); *Settle v. United States*, No. 4:12CV521 JCH, 2012 WL 3891616, at *2 (E.D. Mo. Sept. 7, 2012), *aff'd*, 498 F. App'x 665 (8th Cir. 2013) (claimant had reason to know where "plaintiff clearly knew of the seizure … when the DEA confiscated the currency from him and he signed the disclaimer").

without knowing which agency has possession of the property, a plaintiff does not have sufficient knowledge to file a claim. *See, e.g., United States v. Hill*, No. 2:12-CR-12-04, 2014 WL 971748, at *5 (D. Vt. Mar. 12, 2014) ("Without knowing which law enforcement agency ultimately took possession, [plaintiff] could not have known where to file" his claim).[14]

A second minority of courts has required that an interested party not only know of the seizure, but also have knowledge of the prospective forfeiture proceedings. *United States v. Huggins*, 607 F.Supp.2d 660, 667 (D. Del. 2009), *aff'd*, 385 F. App'x 225 (3d Cir. 2010) ("[D]efendant's knowledge of seizure on the day of his arrest was not sufficient to afford him adequate due process. Defendant received no notice on the day of his arrest that administrative forfeiture proceedings would be commenced on his property"). *See also Gonzalez–Gonzalez v. United States,* 257 F.3d 31, 38 (1st Cir. 2001) ("[A]ctual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of forfeiture proceedings, as opposed to notice-in-fact of seizure"). Courts adopting this interpretation have reasoned that the opportunity to be heard under the due process clause "'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.'" *Huggins*, 607 F. Supp. at 667 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

### 2. Taylor's knowledge

The United States Supreme Court has directed that "[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron*

---

[14] *See also Robinson v. Drug Enforcement Administration*, No. 108CV22 LMB, 2009 WL 3111034, at *2 (E.D. Mo. Sept. 24, 2009).

*Pair Enters. Inc.*, 489 U.S. 235, 242 (1989) (internal quotations and citations omitted). Given this admonition, the Court is inclined to follow the majority approach articulated above, which relies on the clear meaning of § 983(e). However, because, Taylor's motion would fail under any of the tests, the Court declines to adopt a particular standard for determining a claimant's knowledge under § 983(e). *See Mikhaylov v. United States*, 29 F.Supp.3d 260, 270 (E.D.N.Y. 2014) (a court "need not decide which approach correctly interprets the second element of 18 U.S.C. § 983(e)(1)" where party's knowledge satisfied both tests listed).

At the hearing, the Government argued that Taylor cannot establish that the forfeiture must be set aside because Taylor and his attorney had reason to know of the seizure. Specifically, the Government argued that both Taylor and Atkinson were informed by the MBN in August 2010 that the currency had been seized and that it had been turned over to the DEA for forfeiture purposes. The Government argued that, even if knowledge of the seizure necessitated knowledge of the specific agency, the information from the MBN established that Taylor and Atkinson had reason to know.

> In their response to Taylor's petition to contest forfeiture, the MBN stated:
>
> Jurisdiction of the $182,206.93 in United States Currency found in the Claimant's residence; and, $13,376.79 in United States Currency seized from the Claimant's bank account has been released by the Circuit Court of Bolivar County and said currency has been turned over to the federal authorities so that forfeiture may be pursued by the Drug Enforcement Administration.

Doc. #8-4 at 1–2. Such response, which Taylor submitted in support of his complaint, additionally states that state officials were "authorized to transfer and deliver said sum of money to any Special Agent of the Drug Enforcement Agency … for [c]ommencement of forfeiture proceeding pursuant to federal statu[t]es." Doc. #1-3. At the hearing, Taylor testified that he knew the DEA was handling his case and spoke to Atkinson about it.

In light of these facts, the Court concludes that Taylor knew or had reason to know of the seizure under each of the three interpretations listed above. Specifically, it is clear Taylor knew that the Cash had been seized when he signed the notice of seizure from the Mississippi Department of Public Safety. Doc. #8-1 at 3. By virtue of the State's response, Taylor and his attorney[15] both knew that the Cash had been turned over to the DEA. Doc. #8-4 at 1–2; Doc. #1-3. The same document informed Taylor and his attorney that the transfer had been executed to allow the DEA to pursue forfeiture proceedings. Doc. #1-3; Doc. #8-4 at 1–2. Accordingly, the Court must decide whether Taylor had such knowledge within a sufficient time to file a claim for the Cash.

### 3. Time to file claim

Taylor first received notice of the seizure of the Cash on July 2, 2010, when he signed the first notice of seizure. Through the State's August 17, 2010, response, Taylor and his attorney received notice that the Cash had been seized and transferred over to the DEA to pursue forfeiture. Doc. #8-4 at 1–2; Doc. #1-3. Even measuring notice by the later of the two dates, Taylor had approximately six weeks before the October 1, 2010, deadline to file a claim challenging the forfeiture of the Cash. This time period was sufficient to file a claim. *See Miller v. Drug Enforcement Administration*, 566 F. App'x 395, 397 (6th Cir. 2014) (sufficient time to file claim where notice of seizure provided in May 2007 and claim deadline was July 26, 2007); *Flores v. United States*, No. 1:13CV989, 2015 WL 1977581, at *4 (M.D.N.C. Apr. 30, 2015) (claimant "likely" had sufficient time where notice occurred on August 6, 2011, and claim deadline was September 20, 2011). Because Taylor had knowledge of the seizure within a

---

[15] For purpose of a § 983(e) motion, knowledge of a claimant's attorney is imputed to the claimant. *See Kelly v United States*, No. 1:10CV948, 2011 WL 4456569, at *2 (M.D.N.C. Sep. 23, 2011).

sufficient time to file a claim to the Cash, he cannot prevail under 18 U.S.C. § 983. *See Mikhaylov*, 29 F.Supp.3d at 270 (plaintiff's claim under § 983 failed where he "knew that the DEA took that money, which enabled him to make a claim before the agency" but did not do so).

## B. Reasonable Notice

Having found that Taylor cannot show he lacked notice of the seizure of the Cash, it is unnecessary to consider whether he was provided reasonable notice of the forfeiture.

## IV
## Conclusion

Taylor had knowledge of the seizure of the Cash and has conceded the validity of the forfeiture of the Funds. Accordingly, the motion to set aside the administrative forfeitures [1] is **DENIED**. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**SO ORDERED**, this 18th day of July, 2016.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**